UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

Plaintiff,

-v.-

STREB, INC.,

Defendant.

</td><td>

19 Civ. 366 (KPF)

**OPINION AND ORDER**

</td></tr>
</table>

KATHERINE POLK FAILLA, District Judge:

As it had for years, Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") issued a commercial general liability policy and an umbrella liability policy (collectively, the "PIIC Policies") in February 2018 to Defendant Streb, Inc., a performing arts company.  Thereafter, on December 12, 2018, Streb was named in a personal injury lawsuit, captioned *Shana Guins* v. *Streb, Inc.* (N.Y. Sup. Ct. Bronx County, Index No. 34004/2018E) (the "*Guins* action").  In the *Guins* action, a student at Streb, Shana Guins, alleges that she was gravely injured during an acrobatics class at Streb's facility.  Plaintiff initiated this suit on January 15, 2019, seeking a declaratory judgment that it is not obligated to defend or to indemnify Streb in connection with the *Guins* action.

The PIIC Policies contain one noteworthy exclusion, which bars coverage for claims "arising out of the use of any aerial equipment including but not limited to the use of a trapeze or trampoline."  Citing this exclusion, Plaintiff disclaims coverage for the *Guins* action because Ms. Guins was injured while attempting a forward tumble from a trampoline.  Defendant responds that

Plaintiff has interpreted this exclusion too broadly, and that Plaintiff owes a duty to defend, even if its duty to indemnify does not reach the *Guins* action.

The parties have cross-moved for summary judgment on the question of Plaintiff's duty to defend, and Plaintiff has moved for summary judgment on the question of its duty to indemnify. For the reasons detailed below, the Court denies Defendant's motion for partial summary judgment on Plaintiff's duty to defend, grants Plaintiff's motion for summary judgment on its duty to defend and its duty to indemnify, and denies Plaintiff's ancillary motion to exclude the testimony of Defendant's proffered expert, Melanie K. Hall.[1]

### BACKGROUND[2]

**A.  Factual Background**

**1.  Defendant's Insurance Policies**

Defendant Streb is a not-for-profit dance and performance company located in Brooklyn, New York, that provides instruction in acrobatics for

---

[1]  Defendant also brings counterclaims for breach of contract and for a declaratory judgment that Plaintiff has a duty to defend and/or indemnify Defendant in the underlying *Guins* action. (Dkt. #11). Both claims are necessarily decided in Plaintiff's favor by this Opinion because they rise and fall on the same issues of contract interpretation addressed in the motion for summary judgment decided herein.

[2]  The facts alleged herein are drawn from Plaintiff's Local Rule 56.1 Statement of Undisputed Facts ("Pl. 56.1" (Dkt. #48)); Defendant's 56.1 Statement of Undisputed Facts ("Def. 56.1" (Dkt. #53)); the exhibits attached to the Declaration of Adam R. Durst in Support of Plaintiff's Motion for Summary Judgment ("Durst Decl., Ex. [ ]" (Dkt. #45)); the exhibits attached to the Declaration of Robert Bentley in Support of Plaintiff's Motion for Summary Judgment ("Bentley Decl., Ex. [ ]" (Dkt. #46)); the exhibits attached to the Declaration of John H. Kazanjian in Support of Defendant's Motion for Partial Summary Judgment ("Kazanjian Decl., Ex. [ ]" (Dkt. #50)); the exhibits attached to the Declaration of Adam R. Durst in Opposition to Defendant's Motion for Partial Summary Judgment ("Durst Opp. Decl., Ex. [ ]" (Dkt. #55)); and the exhibits attached to the Declaration of Henry Liles in Opposition to Plaintiff's Motion for Summary Judgment ("Liles Decl., Ex. [ ]" (Dkt. #63)). The transcript of the deposition of Henry Liles is referred to as "Liles Dep." (Durst Decl., Ex. 1); the transcript of the deposition of Arianna Dunmire is referred to as "Dunmire Dep." (Durst Opp. Decl., Ex. 4); and the transcript of the deposition of Cassandre Joseph is referred to as "Joseph Dep." (*id.* at

adults and children.  (Def. 56.1 ¶¶ 1-2).  Plaintiff has provided Defendant's commercial general liability and umbrella insurance coverage for at least ten years.  (Liles Decl. ¶ 10)).  Defendant purchased a commercial general liability policy from Plaintiff, Policy No. PHPK1779111 (the "CGL Policy"), for the period February 15, 2018, to February 15, 2019, and a follow-form umbrella policy, Policy No. PHUB618211 (the "Umbrella Policy,"), covering the same policy period.  (Def. 56.1 ¶¶ 3, 7).  The CGL Policy contains a limit of liability of $1 million per occurrence, and the Umbrella Policy is subject to a limit of $4 million per occurrence in excess of the CGL Policy.  (*Id.* at ¶¶ 6, 10).

The CGL Policy provides that Plaintiff:

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies.  [PIIC] will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false, or fraudulent. However, [PIIC] will have no duty to defend the insured

---

Ex. 5).  The expert report of Melanie K. Hall is referred to as "Hall Report."  (Dkt. 29, Ex. 1).

For convenience, the parties' briefs in connection with Plaintiff's Motion for Summary Judgment are referred to as "Pl. Br." (Dkt. #47) and "Def. Opp." (Dkt. #64).  The parties' briefs in connection with Defendant's Motion for Partial Summary Judgment are referred to as "Def. Br." (Dkt. #52) and "Pl. Opp." (Dkt. #56).  The parties' briefs in connection with Plaintiff's Motion to Exclude the Testimony and Opinion of Melanie K. Hall are referred to as "Pl. Exclude Br." (Dkt. #29), "Def. Exclude Opp." (Dkt. #36), and "Pl. Exclude Reply" (Dkt. #59).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.  Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and denied with merely a conclusory statement by the non-movant, the Court finds such fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

> against any "suit" seeking damages for "bodily injury" …
> to which this insurance does not apply.  We may, at our
> discretion, investigate any "occurrence" and settle any
> claim or "suit" that may result.

(Def. 56.1 ¶ 4).  "Bodily injury," "occurrence," and "suit" are defined as follows:

> 3. "Bodily injury" means bodily injury, sickness or
> disease sustained by a person, including death
> resulting from any of these at any time[.]
>
> * * *
>
> 13. "Occurrence" means an accident including
> continuous or repeated exposure to substantially the
> same general harmful conditions.
>
> * * *
>
> 18. "Suit" means a civil proceeding in which damages
> because of "bodily injury," "property damage" or
> "personal and advertising injury" to which this
> insurance applies are alleged[.]

(*Id.* at ¶ 5).  Coverage under the CGL Policy is limited by one relevant exclusion,

the "Designated Ongoing Operations Exclusion" (the "Exclusion"), pursuant to

which Plaintiff excludes coverage for the following:

> Any claims arising out of the use of any aerial
> equipment including but not limited to the use of a
> trapeze or trampoline.  Excluding performers who dive
> off stage and/or participate in human pyramids.

(Pl. 56.1 ¶ 7).

The Umbrella Policy issued by Plaintiff contains a "General Liability

Follow Form Endorsement" that provides, in relevant part:

> The terms and conditions of the "underlying insurance"
> are made a part of this policy except with respect to:
>
> [i] Any contrary provision contained in this policy;
> or

> > [ii] Any provision in this policy for which a similar
> > provision is not contained in "underlying
> > insurance."
>
> With respect to the exceptions stated above, the
> provisions of this policy will apply.

(Pl. 56.1 ¶ 9). The Umbrella Policy defines "underlying insurance" as "any policies of insurance listed in the Declarations under the Schedule of Underlying Insurance." (*Id.* at ¶ 10). The Schedule of Underlying Insurance, in turn, identifies the CGL Policy. (*Id.* at ¶ 11).

In 2014 or 2015, after being told by Defendant's insurance broker that Plaintiff would no longer be providing coverage for "anything involving equipment," Defendant's finance manager, Henry Liles, procured insurance coverage from Certain Underwriters at Lloyd's ("Lloyd's") under Certificate Number LAP0372 17040027 (the "Lloyd's Policy") on Streb's behalf. (Pl. 56.1 ¶¶ 13, 15-16; *see also* Liles Dep. 46:20-47:1, 58:23-59:13, 88:10-19). The Lloyd's Policy includes coverage for claims arising from trampolines. (Pl. 56.1 ¶ 18). The Lloyd's Policy is subject to an eroding limit of $50,000 per person; included within that $50,000 limit are Defendant's "Claim Expenses," including "[a]ll fees, costs and expenses charged by any lawyer or other service provider designated by [the insurer] to represent [Defendant]," as well as "other fees, costs, and expenses … resulting from the investigation, adjustment, defense, and appeal of a Claim." (*Id.* at ¶ 19).

## 2.   The *Guins* Action

On April 2, 2018, Shana Guins was tragically injured while participating in an acrobatics class at Defendant's facility. (Pl. 56.1 ¶¶ 20, 24). Specifically,

5

Ms. Guins was severely injured while attempting forward tumbling from a small trampoline (the "Injury"). (*Id.* at ¶¶ 21-29). The day of the accident, Defendant completed an "Accident/Injury/Incident Report Form" (the "Injury Report") to document the Injury. (*Id.* at ¶ 24). In the Injury Report, the instructor of the acrobatics class and a student in the class, both of whom witnessed the Injury, stated that Ms. Guins was injured while attempting a "dive roll" or "front roll" from the "trampoline" or "mini trampoline." (*Id.* at ¶¶ 23-25). In deposition testimony in the underlying case, Ms. Guins testified that as a part of the acrobatics class, she was to perform forward tumbling from a trampoline; when it was her turn, she walked up to the trampoline, hopped on it with both legs, bounced once, and tumbled forward, landing from the trampoline on her neck and back, causing severe injuries. (*Id.* at ¶¶ 21-22).

By letter dated June 19, 2018, counsel for Ms. Guins requested that Defendant preserve evidence and information relating to the Injury, including that Defendant "secure and safeguard all…policies relating to instruction for the use of trampolines at [Defendant's] premises." (Pl. 56.1 ¶ 31; Durst Decl., Ex. 6). After receiving and reviewing the June 19, 2018 letter and the Injury Report, Defendant's insurance broker, Bob Middleton, advised Mr. Liles that the claim should be forwarded to Lloyd's, and not Plaintiff PIIC, because "this [claim] involves a mini-trampoline" and Defendant's "other carrier" (*i.e.*, Lloyd's) "handles equipment claims." (Pl. 56.1 ¶¶ 35-37). Thereafter, Mr. Middleton notified Lloyd's, who purportedly advised Mr. Middleton that it would contact

Ms. Guins's counsel to offer to pay the full $50,000 limit under the Lloyd's Policy in an effort to settle the claim on behalf of Defendant.  (*Id.* ¶¶ 38, 40; *see also* Durst Decl., Ex. 8).  Thereafter, in October 2018, Mr. Liles inquired into whether Defendant's other policies, including the PIIC Policies, would cover the Injury.  (Pl. 56.1 ¶ 41; *see also* Liles Decl., Ex. 1).  In the resulting email exchange, Mr. Middleton advised Mr. Liles that the CGL Policy "has an exclusion for mini-Tramps specifically for this type of injury," referring to the Exclusion.  (Pl. 56.1 ¶¶ 42-43).  Mr. Liles responded to ask if the PIIC Policy could be interpreted such that a mini-tramp is not "aerial equipment."  (Liles Decl., Ex. 1).

Ms. Guins filed suit against Defendant Streb in New York State Supreme Court, Bronx County, on December 12, 2018, alleging in her complaint that "[o]n April 2, 2018, at approximately 6:00-7:00 p.m. [Ms. Guins] was attempting to do a forward flip while participating in an acrobatic class at STREB, INC. when she felt a crack in her neck," sustaining serious injury.  (Def. 56.1 ¶¶ 15, 17; Pl. 56.1 ¶ 45).  Ms. Guins further alleged that Defendant was negligent for, *inter alia*, "failing to provide proper equipment," but the complaint did not specifically mention that Ms. Guins sustained her injury while using a trampoline.  (Bentley Decl., Ex. 6 (the "*Guins* Complaint")).

Defendant was served with the *Guins* Complaint on December 17, 2018 (Bentley Decl., Ex. 10), and Plaintiff was placed on notice of the Injury and the lawsuit on December 19, 2018, when Mr. Middleton forwarded the *Guins* Complaint to it.  (Def. 56.1 ¶ 19; Pl. 56.1 ¶ 48).  Within two days of receiving

notice from Defendant, Plaintiff determined from conversations with Mr. Liles, Mr. Middleton, and Ms. Guins's counsel that Ms. Guins's injury had occurred while she was using a trampoline.  (Def. 56.1 ¶¶ 26-28; Pl. 56.1 ¶¶ 51-53).  The underlying *Guins* action remains pending in New York State court.  (Def. 56.1 ¶ 47).

### 3.    The Denial of Coverage

Plaintiff issued a disclaimer of coverage to Defendant by letter dated January 7, 2019, basing its decision on its determination that the Injury occurred while Ms. Guins was using a trampoline.  (Def. 56.1 ¶¶ 30-31, 40). Specifically, Plaintiff disclaimed coverage under the CGL Policy pursuant to the Exclusion, which excludes coverage for "[a]ny claims arising out of the use of any aerial equipment including but not limited to the use of a trapeze or trampoline."  (Pl. 56.1 ¶¶ 7, 59).  Plaintiff disclaimed coverage under the Umbrella Policy pursuant to its General Liability Follow Form Endorsement, which incorporates the "terms and conditions" of the CGL Policy, including the Exclusion.  (*Id.* at ¶¶ 9-11, 60).  In its January 7, 2019 letter, Plaintiff offered to provide Defendant with a courtesy defense in the *Guins* action if and when the limits of the Lloyd's Policy were fully exhausted,[3] but noted that it would commence a declaratory judgment action seeking a judicial determination of

---

[3]    Defendant informed Plaintiff that Lloyd's had assigned counsel to defend Defendant, with the cost of defense drawn against the $50,000 eroding limit of the Lloyd's Policy. (Def. 56.1 ¶¶ 26, 45).

non-coverage.  (Def. 56.1 ¶¶ 43-44).  The parties have not informed the Court that the Lloyd's Policy limits have been exhausted.

## B.    Procedural Background

On January 15, 2019, Plaintiff brought this action seeking a declaratory judgment that it is not obligated to defend or to indemnify Defendant in connection with Ms. Guins's injury or the *Guins* action.  (Dkt. #1).  Defendant filed its answer, affirmative defenses, and counterclaims on March 11, 2019. (Dkt. #11).  Plaintiff answered Defendant's counterclaims on April 1, 2019. (Dkt. #14).  Fact discovery closed on October 1, 2019, and expert discovery closed on November 15, 2019.  (Dkt. #24).

At an October 8, 2019 status conference, the Court set a briefing schedule for the parties' anticipated cross-motions for summary judgment. (*See generally* Dkt. #27 (transcript)).  On December 13, 2019, Plaintiff moved to exclude the testimony and opinion of Defendant's proffered expert, Melanie K. Hall.  (Dkt. #29).  Defendant filed its opposition to the motion to exclude on January 10, 2020 (Dkt. #36).  Also on January 10, 2020, Plaintiff moved for summary judgment (Dkt. #32, 44-48), and Defendant moved for partial summary judgment (Dkt. #37, 49-53).  By letter dated January 16, 2020, Plaintiff requested leave to file a reply brief in further support of its motion to exclude, to be due on February 14, 2020 (Dkt. #41), which request the Court granted (Dkt. #43).  Plaintiff filed its reply papers in support of its motion to exclude on February 14, 2020.  (Dkt. #58-59).  The motions for summary

judgment became fully briefed and ripe for decision when both parties'

opposition briefs were filed on February 14, 2020.  (Dkt. #54-56, 61-64).

## DISCUSSION

**A.    The Court Denies Plaintiff's Motion to Exclude the Testimony of Defendant's Expert**

Defendant proffers the expert opinion of Melanie K. Hall to support its

argument that the Designated Ongoing Operations Exclusion is ambiguous.

(Def. Exclude Opp. 5-7).  The Court therefore addresses Plaintiff's motion to

exclude this opinion before evaluating the issues of contract interpretation that

animate the parties' cross-motions for summary judgment.

Under Federal Rule of Evidence 702, an expert witness, unlike a lay

witness, is "permitted wide latitude to offer opinions, including those that are

not based on firsthand knowledge or observation." *Daubert* v. *Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579, 592 (1993).  "Under *Daubert*, the district court

functions as the gatekeeper for expert testimony, whether proffered at trial or

in connection with a motion for summary judgment[.]" *Major League Baseball*

*Props., Inc.* v. *Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (internal

quotations marks and citations omitted).  Expert testimony is admissible if it:

(i) will assist the trier of fact to understand the evidence or determine a fact in

issue; (ii) is based on sufficient facts or data; (iii) is the product of reliable

principles and methods, and (iii) is the product of a reliable application of the

expert's principles and methods to the facts of the case.  *See Daubert*, 509 U.S.

at 590-91; *Restivo* v. *Hessemann*, 846 F.3d 547, 575 (2d Cir. 2017); *see also*

Fed. R. Evid. 702.

Plaintiff disclaims coverage pursuant to the Exclusion, which excludes coverage for "[a]ny claims arising out of the use of any aerial equipment including but not limited to the use of a trapeze or trampoline." (Pl. 56.1 ¶¶ 7, 59). Ms. Hall purports to explain that the meaning of the term "aerial equipment" is distinct from "rebound equipment," as used within the field of gymnastics. (Hall Report 3-4, 6-7). Considering the evidence in Streb's favor, the Court accepts, for purposes of resolving the motion, that Hall is qualified as an expert in her field of gymnastics, and that her methodology is sufficiently reliable.[4] However, the Court pauses to flag several concerns with the reliability and usefulness of Hall's opinion.

*First,* Hall's expertise is limited to coaching and competing in collegiate-level gymnastics competitions (*see* Def. Exclude Opp. 9), limiting the persuasiveness of her opinion as to the definition or classification of equipment, even as used in the gymnastics field. *Second*, Hall's persuasiveness is further limited by the fact that, aside from her experience as coach and competitor, she does not provide any evidence (*i.e.*, articles,

---

[4]    In its opposition to Defendant's motion for partial summary judgment, Plaintiff argues that because Hall's expert report is unsworn, it must be excluded. (Pl. Opp. 23). Defendant is correct that "[c]ourts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005). But because Hall was deposed about her qualifications and the substance of her report, *see generally* Kazanjian Decl., Ex. 19 (transcript of Hall deposition), the Court does not reject the entirety of her opinion out of hand. *Accord Allstate Ins. Co.* v. *Mirvis*, No. 08 Civ. 4405 (SLT) (VVP), 2015 WL 1247103, at *11 n.6 (E.D.N.Y. Mar. 2, 2015) ("Unsworn [expert] letters and reports may be admissible only when the opinions expressed in such documents are reaffirmed by deposition testimony."), *report and recommendation adopted*, 2015 WL 1539671 (E.D.N.Y. Mar. 31, 2015).

manuals, practice guides, or statements by peers in her field) to support her opinion.  (*See generally* Hall Report; *see also* Def. Exclude Opp. 9-10).

*Third*, it is not at all clear under New York law that expert testimony is proper evidence for consideration by a court when determining whether a contract is ambiguous.  *See, e.g.*, *Long Island Lighting Co.* v. *Allianz Underwriters Ins. Co.*, 749 N.Y.S.2d 488, 488 n.2 (1st Dep't 2002) ("[W]hether or not a contract is ambiguous is a question of law for the court, as to which expert testimony is not cognizable.  Thus, we have no occasion to consider the affidavit of a purported expert ... which characterizes the [Policy] as ambiguous.").  *Fourth*, even setting this potential bar aside, evidence of custom in the gymnastics field is not persuasive in defining equipment for the purposes of interpreting an insurance contract, a document that should be interpreted "in light of 'common speech' and the reasonable expectations of a businessperson."  *Belt Painting Corp.* v. *TIG Ins. Co.,* 100 N.Y.2d 377, 383 (2003) (internal citation omitted).[5]  Therefore, the Court accepts Hall's opinion

---

[5]     The cases cited by Defendant to argue that custom may be considered in this situation (*see* Def. Exclude Opp. 5-7) are inapposite.  *See Sompo Japan Ins. Co. of Am.* v. *Norfolk S. Ry. Co.*, 762 F.3d 165, 180-81 (2d Cir. 2014) (interpreting bill of lading in the transportation industry, not in the insurance context); *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 86-87 (2d Cir. 2002) (evaluating custom in the insurance industry itself); *Morgan Stanley Grp. Inc.* v. *New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (holding that insurer did not meet its burden to demonstrate that the contract can "reasonably be construed to cover the claim" regardless of interpretation of ambiguous phrase); *Beazley Ins. Co., Inc.* v. *ACE Am. Ins. Co., et al.*, 197 F. Supp. 3d 616, 624 (S.D.N.Y. 2016) (using evidence from case law, but not expert testimony, to establish that a phrase has an unambiguous, common meaning in specific field), *aff'd sub nom. Beazley Ins. Co., Inc.* v. *ACE Am. Ins. Co.*, 880 F.3d 64 (2d Cir. 2018); *Bijan Designer For Men, Inc.* v. *Fireman's Fund Ins. Co.*, 705 N.Y.S.2d 30, 30 (2000) (rejecting evidence of custom).

at face value for the purpose of resolving the cross-motions, but for the reasons noted above, finds it to be of limited use.

## B.    The Court Grants Plaintiff's Motion for Summary Judgment

### 1.    Applicable Law

#### a.    Summary Judgment Under Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[6] A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, "its opponent must do more than simply show that there is some

---

[6]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations and quotation marks omitted).  The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

### b.   Interpretation of Insurance Contracts Under New York Law

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation."  *Porco* v. *Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009) (internal quotation marks omitted) (quoting *In re Estates of Covert*, 97 N.Y.2d 68, 76 (2001)).  Under New York law, the interpretation of a contract "is a matter of law for the court to decide."  *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal citation omitted); *see also Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide." (internal quotation marks and citation omitted)).  In this case, "[t]he parties do not dispute the material facts underlying the claim[,]" therefore, the case rests on interpretation of the insurance contract, which "is a question of law."  *VAM Check Cashing Corp.* v. *Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

The Court must interpret unambiguous contractual provisions in light of "'their plain and ordinary meaning.'"  *10 Ellicott Square Court Corp.* v. *Mountain*

*Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) (quoting *Essex Ins. Co.* v.

*Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2d Dep't 2010)).  The Court must

interpret such terms "in light of 'common speech' and the reasonable

expectations of a businessperson." *Belt Painting Corp.*, 100 N.Y.2d at 383

(internal citation omitted).  "Where contractual language is ambiguous and

subject to varying reasonable interpretations, intent becomes an issue of fact

and summary judgment is inappropriate....  Only where the language is

unambiguous may the district court construe it as a matter of law and grant

summary judgment accordingly." *Palmieri* v. *Allstate Ins. Co.*, 445 F.3d 179,

187 (2d Cir. 2006) (internal quotation marks and citations omitted).

### c.    The Duty to Defend

The New York Court of Appeals has described the duty to defend as

follows:

> [A]n insurance company's duty to defend is broader
> than its duty to indemnify.  Indeed, the duty to defend
> is exceedingly broad and an insurer will be called upon
> to provide a defense whenever the allegations of the
> complaint suggest a reasonable possibility of coverage.
> If, liberally construed, the claim is within the embrace
> of the policy, the insurer must come forward to defend
> its insured no matter how groundless, false[,] or
> baseless the suit may be.

*Automobile Ins. Co. of Hartford* v. *Cook*, 7 N.Y.3d 131, 137 (2006) (internal

quotation marks and citations omitted).  "The duty [to defend] remains even

though facts outside the four corners of [the] pleadings indicate that the claim

may be meritless or not covered." *Id.* (internal quotation marks and citation

omitted).  An exclusion is "subject to strict construction and must be read

narrowly." *Id.* However, "[a] narrow, but widely recognized exception to the [four corners] rule allows an insurer to refuse or withdraw a defense if evidence extrinsic to those sources and 'unrelated to the merits of plaintiff's action[,] plainly take the case outside the policy coverage.'" *Int'l Bus. Machines Corp.* v. *Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004) (quoting Allan D. Windt, *Insurance Claims and Disputes* § 4:4 (West 2001)); *see also Burt Rigid Box, Inc.* v. *Travelers Prop. Cas. Corp.*, 302 F.3d 83, 96-97 (2d Cir. 2002).

### 2.    Analysis

The parties do not dispute that, but for the Exclusion and its incorporation into the Umbrella Policy,[7] Plaintiff would have both a duty to defend and a duty to indemnify Defendant in the *Guins* action.  (Pl. 56.1 ¶¶ 59-60).  The *Guins* action is a "suit" seeking damages for "bodily injury" within the meaning of the PIIC Policies.  (*See* Def. 56.1 ¶ 5).  The Court therefore focuses its analysis on the core area of disagreement between the parties — namely, the breadth of the Designated Ongoing Operations Exclusion in the PIIC Policies and its applicability to the *Guins* action.

The disagreement reduces to whether, as a matter of contract interpretation, the injury at the root of the *Guins* action triggers the Exclusion because it occurred while Ms. Guins was using a trampoline.  The parties do

---

[7]    Defendant does not dispute that the Designated Ongoing Operations Exclusion is incorporated into the Umbrella Policy through the General Liability Follow Form Endorsement.  (*See generally* Def. Br.; Def. Opp.).  The Court agrees that a plain reading of the General Liability Follow Form Endorsement does serve to incorporate the terms and conditions of the CGL Policy, including the aforementioned Exclusion, into the Umbrella Policy.  (*See* Bentley Decl., Ex. 4).  Therefore, references herein to the Designated Ongoing Operations Exclusion encompass the Exclusion's incorporation into the Umbrella Policy.

not dispute that Ms. Guins was injured while using a small trampoline (*see* Pl. 56.1 ¶¶ 21-29, 52-53) that Defendant refers to as a "mini-tramp."  Because there is no contested issue of material fact, the dispute is properly resolved on summary judgment, and the Court must "give effect to the intent of the parties as expressed in the clear language of the contract."  *Mount Vernon Fire Ins. Co.* v. *Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002) (internal quotation marks and citation omitted).  As discussed below, the Court concludes that the Exclusion is unambiguous and clearly applies to exclude coverage for the *Guins* action because the Injury arose from the use of a trampoline.

### a.      Plaintiff Does Not Owe Defendant a Duty to Defend

But before analyzing Plaintiff's duty to indemnify, the Court must first address two issues related to Plaintiff's putative duty to defend, namely, whether that duty exists and whether the Court may consider evidence extrinsic to the PIIC Policies in making that determination.  In this regard, Defendant argues that Plaintiff has a duty to defend — notwithstanding the apparent applicability of the Designated Ongoing Operations Exclusion — because the underlying complaint in the *Guins* action does not mention that the Injury arose out of the use of a trampoline.  Because the Court concludes that, "as a matter of law ... there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured," Plaintiff has no duty to defend.  *Frontier Ins. Co.* v. *State*, 87 N.Y.2d 864, 867 (1995).  And because the "duty to defend is broader than [the] duty to indemnify," *Automobile Ins. Co. of Hartford*, 7 N.Y.3d 131, 137, "it is unnecessary to engage in a separate analysis

of [the insurer's] independent claim that it has no duty to indemnify apart from [the] insurer['s] claim[] that [it] ha[s] no obligation to defend," *EAD Metallurgical, Inc.* v. *Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990).

To begin, Defendant argues that regardless of Plaintiff's ultimate duty to indemnify, Plaintiff owes Defendant a duty to defend because the *Guins* Complaint does not expressly state that Ms. Guins was injured on a trampoline (*see generally Guins* Complaint), and thus the applicability of the Exclusion is not clear from the "four corners" of the complaint (*see* Def. Br. 11-14; Def. Opp. 9-12). *See also Int'l Bus. Machines Corp.*, 363 F.3d at 148 ("[T]he general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy.").

Here, it is undisputed that the *Guins* Complaint does not mention that Ms. Guins was using a trampoline when she was injured. (*See generally Guins* Complaint). In fact, the complaint is largely devoid of any of the specific factual circumstances surrounding the Injury and fails to plead many facts concerning the Injury that are undisputed by the parties here. (*Id.*). According to Defendant, the failure of the *Guins* Complaint to mention the factual circumstances that trigger the Exclusion requires Plaintiff to defend Defendant in the underlying action without exception. (Def. Br. 13-16).

Although Defendant is correct that under New York's four corner rule, "[t]he duty [to defend] remains even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered," *Automobile Ins. Co. of Hartford,* 7 N.Y.3d at 137 (internal quotation marks and

citation omitted), Defendant overstates the broad nature of the duty to defend. Under New York law, "[a]n insurer's duty to defend ... ends if 'it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision,'" *Burt Rigid Box, Inc.*, 302 F.3d at 97 (quoting *Allstate Ins. Co.* v. *Zuk*, 78 N.Y.2d 41, 45 (1991)); *see also Frontier Ins. Co.*, 87 N.Y.2d at 867 (explaining that an insurer has no duty to defend "if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured"). To hold otherwise would establish an indefinite duty to defend based solely on the pleading decisions made by a plaintiff in an underlying lawsuit. But New York law does not create such an inextinguishable duty. In fact, "[i]t is important that the Court uses the [insurance] policy contract itself to determine the duty to defend, rather than solely examine a complaint drafted by a non-party. Neither party's contractual rights should depend exclusively on a non-party's pleading. This is especially true in New York state, with its liberal pleading regime[.]" *Striker Sheet Metal II Corp.* v. *Harleysville Ins. Co. of N.Y.*, No. 16 Civ. 5916 (ADS) (AYS), 2018 WL 654445, at *9 (E.D.N.Y. Jan. 31, 2018); *see also Stein* v. *N. Assur. Co. of Am.*, 617 F. App'x 28, 30 (2d Cir. 2015) (summary order) (explaining that under New York law, "'the insurer's duty to defend is ... not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy.'" (quoting *Sturges Mfg. Co.* v. *Utica Mut. Ins. Co.*, 37 N.Y.2d 69, 74 (1975))).

Additionally, as a matter of contract interpretation, because the PIIC Policies provide that Plaintiff "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' … to which this insurance does not apply" (Def. 56.1 ¶ 4), a declaratory judgment that the *Guins* action and the underlying Injury unambiguously fall within the Exclusion contractually discharges Plaintiff from a duty to defend.  For the Court to force Plaintiff to defend Streb even after declaring that there is no coverage under the PIIC Policies is to read this provision out of the parties' contract.

Because New York law clearly extinguishes the duty to defend if "there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured," *Frontier Ins. Co.*, 87 N.Y.2d at 867, the question is whether the Court may consider evidence extrinsic to the four corners of the *Guins* Complaint if such evidence "show[s] unequivocally that the damages alleged would not be covered by the policy," *Stein*, 617 F. App'x at 30 (quoting *Sturges Mfg. Co.*, 37 N.Y.2d at 74).  While the Second Circuit has said that the precise delineations of the use of extrinsic evidence to permit an insurer to disclaim its duty to defend are "unclear" under New York law, *see Int'l Bus. Machines Corp.*, 363 F.3d at 148 n.4, it has repeatedly recognized that extrinsic evidence may nonetheless be used for such a purpose in certain situations, *see, e.g.*, *MIC Gen. Ins. Co.* v. *Allen*, 697 F. App'x 717, 720 (2d Cir. 2017) (summary order) (considering evidence extrinsic to hold insurer had no duty to defend); *Stein*, 617 F. App'x at 31 (noting that under New York law, an insurer may disclaim its duty to defend on the basis of extrinsic evidence where such

evidence allows the court "to eliminate the possibility" of coverage in the underlying suit, but declining to do so on facts of that case); *Int'l Bus. Machines Corp.*, 363 F.3d at 148 (same); *Burt Rigid Box, Inc.*, 302 F.3d at 96-97 (considering evidence extrinsic to the four corners of the underlying complaint and holding that the insurer had no duty to defend); *Hugo Boss Fashions, Inc.* v. *Fed. Ins. Co.*, 252 F.3d 608, 621-23 (2d Cir. 2001) (explaining that an insurer can demonstrate that it has no possible liability, and thus no duty to defend, by seeking a declaratory judgment or discovery of evidence extrinsic to the underlying complaint).

This case calls for the consideration of extrinsic evidence because one such exception to the four corners rule applies here, when "evidence extrinsic to [the complaint] and unrelated to the merits of plaintiff's action[,] plainly take the case outside the policy coverage."  *Int'l Bus. Machines Corp.*, 363 F.3d at 148 (internal quotation marks and citations omitted); *see also Avondale Indus., Inc.* v. *Travelers Indem. Co.*, 774 F. Supp. 1416, 1425 (S.D.N.Y. 1991) (collecting cases and noting that "where the factual issue central to the insurance coverage dispute is collateral to the underlying action, so that it is irrelevant to the underlying action and will not be addressed there, the court which has jurisdiction over the declaratory coverage action may make the determination").  Here, it is undisputed that Ms. Guins was using a trampoline at the time of the Injury, and Defendant does not claim that it is a disputed

fact in the underlying suit.[8]  Thus, extrinsic evidence that Ms. Guins's injury

occurred while using a trampoline is admissible as long as it "conclusively

establish[es] that an insurer faces no possible liability."  *Burt Rigid Box, Inc.*,

302 F.3d at 97.  As discussed below, the Exclusion unambiguously applies to

exclude coverage for claims arising out of the use of trampolines.  Therefore,

extrinsic evidence of Ms. Guins's use of a trampoline does "conclusively

establish that an insurer faces no possible liability," *id.*, and it may be

considered in resolving the parties' cross-motions.

> **b.**   **The Plain Language of the PIIC Policies Bars Coverage in the *Guins* Action**

In interpreting an insurance contract, the Court "begins with the plain

language of the provision in dispute."  *Lantheus Med. Imaging, Inc.* v. *Zurich*

*Am. Ins. Co.*, 255 F. Supp. 3d 443, 457 (S.D.N.Y. 2015), *aff'd*, 650 F. App'x 70

(2d Cir. 2016) (summary order).  The parties disagree over the interpretation of

the Exclusion, which bars coverage for "[a]ny claims arising out of the use of

any aerial equipment including but not limited to the use of a trapeze or

trampoline."  (Pl. 56.1 ¶ 7).  Plaintiff's argument for application of the Exclusion

is straightforward: the exclusion bars coverage for any suit that "arises out of"

the use of aerial equipment, which is specifically enumerated to include

trampolines.  Because there is no dispute that the injury at issue in the *Guins*

---

[8]     Defendant claims that the extrinsic evidence at issue here, namely the use of a trampoline, overlaps with the facts at issue in the *Guins* case, and therefore precludes consideration of such evidence.  (Def. Br. 16).  But Defendant has not suggested that Ms. Guins's use of a trampoline is actually at issue in the *Guins* case and Defendant's own uncontroverted records clearly establish that Ms. Guins was using the trampoline at the time of her injury.  (Pl. 56.1 ¶¶ 24-29).

action occurred while Ms. Guins was using a trampoline (Pl. 56.1 ¶¶ 21-29, 52-53), Plaintiff argues that the exclusion applies (Pl. Br. 10-13).  Defendant offers a number of arguments in opposition that can be distilled to two related points: *first*, that the term "aerial equipment" should be read to modify "trampoline" such that the exclusion applies to only specific types of trampolines; and *second*, that when trampoline is modified by "aerial equipment," the provision becomes ambiguous.  The Court agrees with Plaintiff that the language of the Exclusion clearly encompasses claims arising out of the use of all trampolines and is not ambiguous.

### i.      The Injury "Arises out of" the Use of a Trampoline

Defendant does not dispute that the claim "arises out of" the use of a trampoline, and instead argues only that the contract should not be read to include a particular type of trampoline.  (Def. Opp. 14-18).  The Court briefly pauses to note, in the interest of completeness, that New York courts have construed the language "arising out of" broadly: "[i]n insurance contracts, the phrase arising out of is ordinarily understood to mean originating from, incident to, or having connection.  It requires only that there be some causal relationship between the injury and the risk for which coverage is provided or excluded."  *Nat. Organics, Inc.* v. *OneBeacon Am. Ins. Co.*, 959 N.Y.S.2d 204 (2d Dep't 2013) (internal citations and quotation marks omitted).  The Injury at the heart of both the *Guins* action and this case meets this broad definition, as it is undisputed that the Injury occurred while Ms. Guins attempted forward tumbling from a small trampoline.  (Pl. 56.1 ¶¶ 21-29).

### ii. The Designated Ongoing Operations Exclusion Is Not Ambiguous

As already noted, the Exclusion bars coverage for "[a]ny claims arising out of the use of any aerial equipment including but not limited to the use of a trapeze or trampoline." (Pl. 56.1 ¶ 7). The most straightforward, plain reading of this provision establishes that the general term "aerial equipment" is qualified by, and is defined to include, the more specific terms "trampoline" and "trapeze." *See Aramony* v. *United Way of Am.*, 254 F.3d 403, 413-14 (2d. Cir. 2001) (noting that "it is a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language'" (quoting *Restatement (Second) of Contracts* § 203(c) (1981))); *see also In re Cocoa Servs., L.L.C.*, No. 17 Civ. 11936 (JLG), 2018 WL 1801240, at *12 (Bankr. S.D.N.Y. Apr. 13, 2018) (analyzing the use of the phrase "including but not limited to" in situations where, as here, it is used as an "enlargement clause" such that the specific enumerated terms enlarge the scope of the general term). Thus, the "plain and ordinary meaning" of this contract is that the Exclusion applies to preclude any claim that arises out of the use of a trampoline, and that trampolines (of all types) are specifically enumerated as one kind of aerial equipment.

Defendant would have the Court flip the plain meaning of the exclusion on its head. The Exclusion explicitly defines aerial equipment to include trampolines. But Defendant argues that this provision is ambiguous because it can be reasonably read so that "aerial equipment" modifies "trampoline." (Def. Br. 18-22). This reading cannot be correct, because aerial equipment

does not have a clear definition, and thus there is no reasonable alternate reading.[9]  Defendant argues that "aerial equipment" is ambiguous and supplies an *ipse dixit* definition of that term.[10]  It concedes that "[n]either 'aerial' nor 'aerial equipment' is defined in the [PIIC] Policies," and therefore cherry-picks definitions of the word "aerial" to reverse-engineer its preferred interpretation. (*Id.* at 19).  But the drafters of the Exclusion provided the words "trampoline" and "trapeze" precisely to address the ambiguity that Defendant attempts to create here.  By trying to redefine "trampoline" through the lens of "aerial equipment," Defendant injects ambiguity where none exists.

In support of its argument that it is reasonable to read the Exclusion so that "aerial equipment" modifies "trampoline," Defendant argues that: (i) a mini-tramp is not considered aerial equipment in the gymnastics field, and (ii) one proffered definition of trampoline suggests that a mini-tramp is a type of

---

[9]    For this reason, Defendant's examples of purportedly similar phrases are inapposite, as all the qualifying terms in those phrases (like "power tool" and "digital device") have widely understood common meanings.  (*See* Def. Br. 18-19).  By contrast, the term "aerial equipment" does not have a widely understood common meaning.  Furthermore, Defendant's analogy assumes that "mini-tramp" has a common meaning, because Defendant's examples (*i.e.*, "analog phone" and "hand saw") have widely understood common meanings.  (Def. Br. 18).  But Defendant does not cite any common meaning of "mini-tramp."  (*See generally* Def. Br.; Def. Opp.).  Even accepting the testimony of Defendant's expert, Melanie K. Hall, the Court observes that Defendant's reliance on Hall's testimony to define either "aerial equipment" or "mini-tramp" suggests that neither term has a common meaning.  After all, if either phrase had a common or lay meaning, expert testimony would not be needed.  *See* Fed. R. Evid. 701(c).

[10]   Even were the Court to accept Defendant's *ipse dixit* definition of "aerial equipment," Defendant does not explain: (i) which trampolines qualify as aerial equipment and why they are classified as such; and (ii) how "high up in the air" must a trampoline be capable of propelling a user to be considered aerial equipment.  (*See* Def. Opp. 15-16 (defining "aerial equipment" as "high up in the air" and distinguishing a mini-tramp because its small size allegedly precludes someone from getting "high up in the air"; but failing to explain what constitutes "high up in the air" and failing to establish that a mini-tramp is incapable of propelling someone that high)).

trampoline that is not aerial equipment.  (Def. Br. 22-24).  Accepting
Defendant's *ipse dixit* definition of aerial equipment, and its assertion that
aerial equipment should be read to modify trampoline, these arguments still
fail.

*First*, the testimony and opinion of Melanie K. Hall, Defendant's expert,
relates to the meaning, within the field of gymnastics, of "aerial equipment" as
a term distinct from "rebound equipment."  (Hall Report 3-4, 6-7).  Considering
this evidence in Defendant's favor by accepting Hall's opinion that such a
distinction is well-established in the gymnastics field does not suggest that the
insurance contract is ambiguous.  As discussed above, evidence of custom in
the gymnastics field is not persuasive in defining equipment for the purposes of
interpreting an insurance contract.  Nor is there any reason to believe that the
use of the phrase "aerial equipment" in the Exclusion was imported from the
gymnastics field or that the parties were attempting to distinguish it from
"rebound equipment."  (*See* Def. 56.1 ¶¶ 36-38 (explaining that the provenance
of the Exclusion is the theater field)).  *Second*, Defendant's citation to a single
dictionary definition to suggest that trampolines must be "several feet above
the floor" (Def. Br. 23; *see also* Kazanjian Decl., Ex. 17), is undermined by the
other dictionary definition Defendant cites, which does not contain a height
requirement (Def. Br. 23 (defining a trampoline as "a resilient sheet or web ...
supported by springs in a metal frame and used as a springboard and landing
area in tumbling" (internal quotation marks omitted) (quoting *Trampoline*,

Merriam-Webster, https://www.merriamwebster.com/dictionary/trampoline
(last visited Sept. 9, 2020)))).

In fact, despite claiming that the distinction between trampoline and
mini-tramp is a critical one for the purpose of contract interpretation,
Defendant offers no evidence that there is any meaningful distinction
whatsoever.  Indeed, Defendant and its employees use the term "mini-tramp"
interchangeably with trampoline and they refer to mini-tramps as a type of
trampoline.  (*See, e.g.*, Pl. 56.1 ¶ 28; Dunmire Dep. 107:18-108:5, 133:19-
134:25; Joseph Dep. 51:25-52:12, 84:8-10).  With its interpretative gymnastics,
Defendant tries to manufacture a carve-out for mini-tramps, which Defendant
argues are not "aerial equipment" even if they are "trampolines."  To accept
Defendant's contorted reading throws out the plain language of the contract.
The Exclusion is not ambiguous and Defendant fails to suggest otherwise.

### iii.   Defendant's Other Arguments Fail Because the Contract Is Not Ambiguous

Defendant offers several additional arguments as to why Plaintiff is not
entitled to summary judgment, but because the language of the PIIC Policies is
not ambiguous, these arguments fail as a matter of law.  First, Defendant
contends that extrinsic evidence of the parties' intent — such as the relative
cost of the PIIC Policies, information about the provenance of the Exclusion,
and 2018 emails between Mr. Liles and Mr. Middleton about their
understanding of the scope of the exclusion — supports a narrow reading of
the Exclusion.  (Def. Opp. 19-23).  But under New York law, courts will not
consider extrinsic evidence where the language of the contract is unambiguous.

*See Chesapeake Energy Corp.* v. *Bank of New York Mellon Tr. Co.*, 773 F.3d 110, 117 n.3 (2d Cir. 2014) (citing *Howard* v. *Howard*, 740 N.Y.S.2d 71, 71 (2d Dep't 2002)).  Plaintiff's invocation of the doctrine of *contra proferentem* fails for the same reason.  *See Olin Corp.* v. *OneBeacon Am. Ins. Co.*, 864 F.3d 130, 148 (2d Cir. 2017) (explaining that the doctrine of *contra proferentem* is applicable only if the contract is ambiguous and extrinsic evidence fails to establish the parties' intent).

## CONCLUSION

For the reasons stated in this Opinion, Plaintiff's motion to exclude the testimony of Defendant's proffered expert is DENIED, Plaintiff's motion for summary judgment is GRANTED, and Defendant's cross-motion for partial summary judgment is DENIED.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      September 16, 2020
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge